UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MACK JUIDE,

                     Plaintiff,

v.

MICHIGAN DEPARTMENT
OF CORRECTIONS, *et al*.

                     Defendants.

_____/

Case No. 2:16-cv-13806
District Judge Sean F. Cox
Magistrate Judge Anthony P. Patti

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT KONE INC.'S MOTION TO DISMISS (DE 20) and DENY STATE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DE 22)

**I.     RECOMMENDATION**:  The Court should grant Defendant KONE's motion to dismiss (DE 20) and deny the State Defendants' motion for summary judgment (DE 22).  Whatever the Court decides as to these motions, the claims against Defendant Corizon remain to be addressed.  Thus, the case should not be closed.

**II.     REPORT:**

    **A.     Plaintiff brings his lawsuit against 9 defendants.**

Mack Juide (#441625) is currently incarcerated at the Michigan Department of Corrections (MDOC)'s Oaks Correctional Facility (ECF) in Manistee, Michigan.  *See* www.michigan.gov / corrections, "Offender Search."  On October

1

25, 2016, while incarcerated at ECF, Juide filed the instant verified lawsuit *in pro per* against nine defendants: the MDOC; health care contractor Corizon Health, Inc., wheelchair lift contractor KONE Company (KONE, Inc.), and six employees of the MDOC's Gus Harrison Correctional Facility (ARF), where the facts underlying this lawsuit allegedly took place. (DE 1 ¶¶ 2-9, 13.) Plaintiff alleges (Counts I & IV) violations of the Eighth Amendment, the Americans with Disabilities Act (ADA) (42 U.S.C. §§ 12101-12213), and the Michigan Persons with Disabilities Civil Rights Act (MPDCRA) (Mich. Comp. Laws §§ 37.1101-37.1607); (Count II) retaliation and discrimination; and (Count III) deprivation of medically necessary aids, medical treatment and medical privacy. (DE 1 ¶¶ 23-40.)

> **B.    The eight Defendants who have appeared have filed dispositive motions.[1]**

This case has been referred to me for all pretrial proceedings. Currently before the Court are: (**1**) KONE, Inc.'s February 10, 2017 motion to dismiss (DE 20); and (**2**) the seven State Defendants' motion for summary judgment on the basis of exhaustion (DE 22).

---

[1] For whatever reason, the U.S. Marshal Service's December 12, 2016 attempt at service upon Defendant Corizon Health – apparently to 105 Westpark Dr., Ste. 200, Brentwood, TN 37027 - was returned as undeliverable in January 2017. (DE 17.) Under separate cover, the Court will enter an order directing the USMS to re-attempt service upon Corizon at its corporate office (103 Powell Court, Brentwood, TN 37027). *See* www.corizonhealth.com, "Contact."

Responses to these motions were due on April 11, 2017.  (DE 23.)  On April 14, 2017, Plaintiff filed a response.  (DE 26.)[2]  The State Defendants and Defendant KONE have filed replies.  (DEs 27, 28.)

### C.      Fed. R. Civ. P. 12

Defendant KONE brings its motion pursuant to Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "construe the complaint in the light most favorable to plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (concluding that a plausible claim need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action").   Facial plausibility is established "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  "The plausibility of an inference depends on a host of considerations,

---

[2] The Court will treat this filing as timely, as it is dated April 7, 2017, the certificate of service is dated April 10, 2017, and it is post-marked April 11, 2017. (*See* DE 26 at 7-9; *Houston v. Lack*, 487 U.S. 266, 270 (1988).)

including common sense and the strength of competing explanations for the defendant's conduct." *16630 Southfield Ltd., P'Ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 503 (6th Cir. 2013).

Furthermore, the Court holds *pro se* complaints to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even in pleadings drafted by *pro se* parties, "'courts should not have to guess at the nature of the claim asserted.'" *Frengler v. Gen. Motors*, 482 F. App'x 975, 976-77 (6th Cir. 2012) (quoting *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989)). Furthermore, "courts may not rewrite a complaint to include claims that were never presented . . . nor may courts construct the Plaintiff's legal arguments for him. Neither may the Court 'conjure up unpled allegations[.]'" *Rogers v. Detroit Police Dept.*, 595 F.Supp.2d 757, 766 (E.D. Mich. 2009) (Ludington, J., adopting report and recommendation of Binder, M.J.); *see also, Evans v. Mercedes Benz Fin. Servs., LLC*, No. 11-11450, 2011 WL 2936198, at *2 (E.D. Mich. July 21, 2011) ("Even excusing plaintiff's failure to follow Rules 8(a)(2) and 10(b), a *pro se* plaintiff must comply with basic pleading requirements, including Rule 12(b)(6).").

### D.   Discussion

#### 1.   Plaintiff's factual allegations concern a wheelchair lift at ARF.

Plaintiff is paralyzed from the chest down and confined to a wheelchair. (DE 1 ¶ 12.)  He contends that, upon his arrival at ARF, he was assigned to 3-Unit, "which is ostensibly equipped to accommodate physically handicapped prisoners[,]" as it is "equipped with a wheelchair lift to facilitate movement for wheelchair-bound prisoners who are situated on the lower level of the housing unit[.]"  (DE 1 ¶¶ 13-14.)  According to Plaintiff:

> The wheelchair lift in 3-Unit has been the subject of what can only be described as routine and protracted episodes of disrepair, dilapidation and being out of service, resulting in Plaintiff's continual confinement to the lower level of 3-Unit[.]

(DE 1 ¶ 15.)  As a result, Plaintiff claims to have been deprived of various rights, such as "fresh air and proper exercise," "telephone usage," "electronic mail," "legal materials and the ability to conduct independent legal research," "health care," and "medically necessary accoutrements."  (DE 1 ¶ 16.)  Specifically, Plaintiff alleges that from about July 9, 2014 through July 14, 2016, the wheelchair lift had been inoperable.  (DE 1 ¶ 17.)

### 2. Plaintiff filed several administrative grievances concerning ARF.

The Court is aware of at least nine grievances Plaintiff filed during his incarceration at ARF, each of which was initiated in either July 2016, August 2016 or September 2016:

- **ARF-16-07-1627-12E**, which would have been initiated during July 2016 (DE 22 at 6);

- **ARF-16-07-1597-12D**, which would have been initiated during July 2016 (DE 22 at 6);

- **ARF-16-07-1599-03f**, which would have been initiated during July 2016 and which Plaintiff claims names Defendants Klee, Chapman, Martin, Tanner and Donaghy, alleging that they "were in violation of the ADA for their individual and collective failures to maintain the wheelchair lift in working condition . . . [,]" (DE 1 ¶ 17);

- **ARF-16-07-1628-03E**, which was received at Step I on July 19, 2016 and received at Step III on August 15, 2016 (DE 22-3);

- **ARF-16-07-1645-17B**, which would have been initiated in July 2016 (DE 26 at 6);

- **ARF-16-08-1883-28A**, which would have been initiated in August 2016 (DE 26 at 6);

- **ARF-16-08-1911-27C**, which was received at Step I on August 18, 2016 and received at Step III on October 5, 2016 (DE 22-3);

- **ARF-16-08-1952-28K**, which was received at Step I on August 24, 2016 and received at Step III on October 5, 2016 (DE 22-3); and,

- **ARF-16-09-2143-17B**, which was received at Step I on September 16, 2016 and received at Step III on December 6, 2016 (DE 22-3).

Plaintiff claims he has "availed himself [of] each tier of the available administrative remedial process and has had innumerable informal discussion[s] with most of the named Defendants with respect to the instant matter[;] yet[,] the Defendants continue to engage in the unconstitutional conduct that is the basis of

this Complaint[.]"  (DE 1 ¶ 19.)  Plaintiff claims that, in several of his grievances,

Defendant Chapman was the Step I respondent and Step II reviewer "in clear

derogation of due process and MDOC policy, thereby rendering the grievance

process nugatory[.]"  (DE 1 ¶ 20.)

### 3.    Plaintiff has not stated an ADA, MPDCRA or Eighth Amendment claim against Defendant KONE.

It seems that Plaintiff only brings Count IV (8th Amendment, ADA and

MPDCRA) against Defendant KONE, alleging that it "failed to establish a

schedule of regular and preventative maintenance with respect to the wheelchair

lifts at [ARF] . . . ."  (DE 1 ¶¶ 39, 40.)  Defendant KONE is entitled to the

dismissal of Plaintiff's claims against it.

### a.    The Americans with Disabilities Act of 1990 (42 U.S.C. §§ 12101-12213)

The ADA does not apply to Defendant KONE.  By way of background, the

subchapters of the ADA address: (I) employment (§§ 12111-12117); (II) public

services (§§ 12131-12134, including sections related to public transportation (§§

12141-12150, 12161-12165)); (III) public accommodations and services operated

by private entities (§§ 12181-12189); and (IV) miscellaneous provisions (§§

12201-12213).  Although Plaintiff's complaint makes several references to the

ADA, the particular basis for such a claim against Defendant KONE is unclear.

(*See* DE 1 ¶¶ 4, 39-40.)  To be sure, Plaintiff generally cites 42 U.S.C. §§ 12101, *et*

*seq*., and then, within his "retaliation and discrimination" count cites a subsection

of 42 U.S.C. § 12203 ("Prohibition against retaliation and coercion").  (DE 1 ¶¶ 10,

29).  However, due to his reference to 28 CFR § 35.152 ("Jails, detention and

correctional facilities, and community correctional facilities.") (*see* DE 1 ¶ 26), the

authority for which includes 42 U.S.C. §§ 12131, 12134 and 12205a ("Rule of

construction regarding regulatory authority"), the Court interprets Plaintiff's ADA

claim against Defendant KONE as based upon the public services provision of

Subchapter II.

KONE contends it is "a private corporation that merely contracts with the

State of Michigan for the maintenance of certain elevators located in certain state

facilities."  (DE 20 at 14.)  This is consistent with Plaintiff's description of

Defendant KONE as "the company under contract with the State of Michigan to

maintain and repair the wheelchair lifts at [ARF][.]"  (DE 1 ¶ 4.)  The ADA

provides that "no qualified individual with a disability shall, by reason of such

disability, be excluded from participation in or be denied the benefits of the

services, programs, or activities of a *public entity*, or be subjected to discrimination

by any such entity."  42 U.S.C. § 12132 (emphasis added).  A public entity

includes "any department, agency, special purpose district, or other instrumentality

of a State or States or local government[.]"  42 U.S.C. § 12131(1)(B).  As this

Court has stated:  "A private contractor does not become a 'public entity' under

8

Title II merely b[y] contracting with a governmental entity to provide

governmental services." *Cox v. Jackson*, 579 F. Supp. 2d 831, 852 (E.D. Mich.

2008) (Rosen, J.) (adopting report and recommendation of Komives, M.J.).  Thus,

any ADA claim brought against Defendant KONE should be dismissed.  *See*

*Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 169 (3d Cir. 2015)

(affirming dismissal of statutory claims against defendants who "are not public

entities subject to suit under the ADA or the Rehabilitation Act."); *see also Phillips*

*v. Tiona*, 508 F. App'x 737, 754 (10th Cir. 2013) ("Title II of the ADA does not

generally apply to private corporations that operate prisons.").[3]

### b.      Michigan Persons with Disabilities Civil Rights Act (Mich. Comp. Laws §§ 37.1101-37.1607)

The events underlying Plaintiff's complaint occurred during his

incarceration at ARF, and the MPDCRA does not apply to ARF.  Michigan's

PDCRA provides that a person may not "[d]eny an individual the full and equal

enjoyment of the goods, services, facilities, privileges, advantages, and

accommodations of a place of public accommodation or *public service* because of

a disability that is unrelated to the individual's ability to utilize and benefit from the

---

[3] Although Plaintiff's complaint mentions the Rehabilitation Act of 1973 (DE 1 ¶ 10), codified at 29 U.S.C. §§ 701-796l, he does so in his jurisdictional statement, and the particular section he cites concerns "[n]ondiscrimination under Federal grants and programs[,]" 29 U.S.C.A. § 794.  As this citation is not repeated within Count IV (DE 1 ¶¶ 38-40), it is not addressed as a basis for Plaintiff's claim against Defendant KONE.

goods, services, facilities, privileges, advantages, or accommodations or because of the use by an individual of adaptive devices or aids." Mich. Comp. Laws § 37.1302(a) (emphasis added). "[P]ublic service does not include a state or county correctional facility with respect to actions or decisions regarding an individual serving a sentence of imprisonment." Mich. Comp. Laws § 37.1301(b). *See also Uhrynowski v. Cty. of Macomb*, No. 06-15483, 2007 WL 2984001, at *9 (E.D. Mich. Oct. 12, 2007) (Hood, J.) ("The plain meaning of the statute's language excludes correctional facilities only in regard to persons serving prison sentences."). Thus, as Defendant KONE argues, Plaintiff's MPDCRA claim fails "as a matter of law . . . ." (DE 20 at 16.)

### c.     Eighth Amendment of the U.S. Constitution

Plaintiff has not stated an Eighth Amendment claim against Defendant KONE that is independent of the ADA and MPDCRA claims. (*See* DE 1 ¶¶ 10, 27, 40.) As an initial matter, the Court assumes that any such claim is based upon alleged deliberate indifference to a serious medical need or to a substantial risk of serious harm. (*See* DE 26 at 6.) As to the Eighth Amendment claim, Defendant KONE argues that Plaintiff "failed to allege that KONE acted under color of state law[,]" "failed to allege that a policy or custom of KONE caused the alleged injury[,]" and "cannot show deliberate indifference to serious medical needs." (DE 20 at 16-24.) Plaintiff's response, although it mentions the Eighth Amendment,

does not address these arguments.  (*See* DE 26 at 6-7.)  Therefore, this portion of Defendant KONE's motion is effectively unopposed.  Perhaps more importantly, it is unclear how any role Defendant KONE had in the "failure to establish a schedule of regular and preventative maintenance" with respect to ARF's wheelchair lifts resulted in seeming deliberate indifference by Defendant KONE as prohibited by the Eighth Amendment.  (DE 1 ¶¶ 39, 40.)  Having only alleged a conclusory Eighth Amendment claim against Defendant KONE, Plaintiff has failed to state a claim against this defendant upon which relief may be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (citing *Twombly*, 550 U.S. at 555).

4. **At this time, the seven State Defendants are not entitled to dismissal of Plaintiff's claims against them on the basis of failure to exhaust.**

The State Defendants include the MDOC, ARF warden Klee, ARF deputy warden Chapman, ARF head of maintenance White, ARF Resident Unit Manager (RUM) Martin, and ARF Assistant Resident Unit Supervisors (ARUS) Tanner and Donaghy.  (DE 1 ¶¶ 2, 5-9.)  As previously noted, Plaintiff claims that the state of the wheelchair lift has resulted in certain deprivations.  (DE 1 ¶ 16.)  He also claims that the filing of ARF-16-07-1599-03f resulted in retaliation in the form of placement in areas that did not have proper accessibility.  (DE 1 ¶¶ 17-18.)

11

Plaintiff further claims that Defendants have retaliated against him "in sundry forms," such as by depriving him of "access to health care and proper meals[.]" (DE 1 ¶ 21.)  Plaintiff claims to have suffered "incalculable emotional distress and physical harm[.]"  (DE 1 ¶ 22.)  In sum, it appears that Plaintiff's claims against the State Defendants are encompassed by Counts I & IV (Eighth Amendment, ADA & MPWDA) and Count II (retaliation and discrimination).  (*See* DE 1 ¶¶ 27, 30, 33, 34, 39, 40.)[4]

### d.   Exhaustion of administrative remedies under the PLRA

Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007).  Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  In addition, exhaustion "gives an

---

[4] This is so, even though Count III makes use of the phrase "conduct of *Defendants*, discretely and in *aggregate*[.]"  (DE 1 ¶ 36 (emphasis added).)  I reach this conclusion, because when read with the final paragraph of this cause of action, it is clear that Count III is only brought against Defendant Corizon.  (*See* DE 1 ¶ 37.)

agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citations omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 219 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The prisoner "may not exhaust his [or her] administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 US at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . ."). However, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust

administrative remedies is an affirmative defense under the PLRA.  As such, Defendants bear the burden of proof on exhaustion.  *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).

> **e.    A question of material fact remains as to whether Plaintiff exhausted his administrative remedies as to his claims against the State Defendants.**

The MDOC's procedure regarding prisoner/parolee grievances is set forth at MDOC PD 03.02.130.  (DE 15-2.)  It is a three-step process.  (*See* DE 15-2 ¶¶ V-GG.)  Significantly, the policy provides that "[c]omplaints filed by prisoners regarding grievable issues as defined in this policy serve to exhaust a prisoner's administrative remedies only when filed as a grievance through all three steps of the grievance process in compliance with this policy."  *Id.* ¶ B.

The State Defendants contend that Plaintiff "has failed to exhaust his grievances."  (DE 22 at 5.)  The basis of this argument is that Plaintiff's Step III grievance report "indicates that he did not complete the grievance process for *any* of his Step III grievances prior to filing this lawsuit on October 25, 2016."  (DE 22 at 8 (emphasis in original); *see also* DE 22 at 13-14.)  That may be so.  Plaintiff's MDOC Prisoner Step III Grievance Report reveals that the Step III responses in **ARF-16-07-1628-03E**, **ARF-16-08-1911-27C**, **ARF-16-08-1952-28K**, and **ARF-16-09-2143-17B** all post-date October 25, 2016 – anywhere from November 23, 2016 through December 13, 2016.

However, Plaintiff's Step III appeals in *the first three of these grievances were received at Step III on dates before October 25, 2016* – as early as August 15, 2016 and October 5, 2016.  (DE 22-3.)  Thus, this lawsuit was filed as many as 71 days or as few as 20 days following the receipt of his grievance appeals at Step III. Thus, at least as to these three grievances, Plaintiff cannot be accused of "jumping the gun."  This is significant, because there is no response "due date" set forth in the Step III section of the policy.  *See id.* ¶¶ FF, GG.[5]  Instead, the general provisions of the grievance process provide:

> Grievances and grievance appeals at all steps shall be considered filed on the date sent by the grievant.  *The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II.*  An extension for a Step I or II response shall not exceed 15 business days unless the grievance falls within the jurisdiction of the Internal Affairs Division.  The Grievance Coordinator shall immediately notify the grievant in writing whenever an extension has been approved; the extension also shall be noted in the grievance response.

*Id.* ¶ S (emphasis added).  At least as to the earliest of these grievances - **ARF-16-07-1628-03E -** that timeline was exceeded.  ARF-1620 was received at Step I on July 19, 2016; 120 days thereafter would have been November 16, 2016.  The

---

[5] By comparison, the grievance policy provides that the due date for Step I and Step II grievance responses is "15 business days after receipt of the grievance," in the absence of an extension.  *See* MDOC PD 03.02.130 ¶¶ X, CC, effective July 9, 2007.  Then, "if no response was received" to a Step I or Step II grievance, then Plaintiff may proceed to Step II or Step III "within ten business days after the date the response was due, including any extensions."  *Id.* at ¶¶ BB, FF.

MDOC's Step III grievance response was dated 7 days afterward – November 23, 2016.

True, Plaintiff filed his October 25, 2016 lawsuit before the 120 days had expired.  However, the foregoing scenario begs the question, "How long was Plaintiff supposed to wait from the time he submitted his Step III grievance appeal to the time he filed his lawsuit?"  In Plaintiff's case, ARF-1628 was received at Step III on August 15, 2016.  As noted above, Plaintiff did not file his lawsuit until 71 days later.  In his response, without referring to a certain one of the four grievances upon which the State Defendants rely, Plaintiff explains that he filed the instant action "before receiving a step III response," because he was "suffering from a urinary tract infection[.]"  (DE 26 at 5.)  He contends that the "extreme and inhumane circumstances" detailed in his complaint required "immediate need of some type of intervention . . . ."  (DE 26 at 5-6.)

Not only has Plaintiff offered a possible explanation for why he did not wait to receive a Step III response, but also the State Defendants have not convinced the Court that "there is no genuine dispute as to any material fact and [they are] entitled to judgment as matter of law."  Fed. R. Civ. P. 56(a).  While they have supplied a Step III grievance report, they have not provided a single underlying grievance form or grievance response.  Thus, not only is the Court without guidance as to the subject of these grievances, but, more importantly, the Court is

without guidance as to whether any extensions were granted – something which might have shed light on the reasonableness of Plaintiff's 71-day waiting period.

In sum, based on the record before the Court, at the time Plaintiff filed the instant lawsuit, he appears to have been "waiting in limbo" for 71 days for the MDOC to respond to his August 15, 2016 Step III grievance appeal in ARF-1628. As such, even if Plaintiff admits that he filed his lawsuit "before receiving a step III response[,]" and even if Plaintiff has not alleged or demonstrated that the grievance procedure "was otherwise unavailable to him [so] as to thwart his compliance" with the PLRA's requirements (*see* DE 28), the Court is not in a position to conclude that Plaintiff pre-empted the grievance process when he filed his lawsuit on October 25, 2016.[6]

### 5. Plaintiff's claims against yet-to-appear Defendant Corizon remain to be addressed by the Court.

Plaintiff describes Defendant Corizon Health as "a health management organization under contract with the State of Michigan to provide health care services to Michigan prisoners . . . ." (DE 1 ¶ 3.)  It seems that Plaintiff's claims against Defendant Corizon are limited to Count III, which Plaintiff labels as "deprivation of medically necessary aids, medical treatment and medical privacy."

---

[6] Plaintiff's response points to five additional grievances **- ARF-16-07-1597-12D, ARF-16-07-1599-03f (**which is even mentioned in his complaint (DE 1 ¶ 17), **ARF-16-07-1627-12E**, **ARF-16-07-1645-17B** and **ARF-16-08-1883-28A.**  (DE 26 at 6.)  The Court assumes that these grievances were not appealed through Step III, as they do not appear on Plaintiffs' MDOC Step III grievance report.  (DE 22-3).

(DE 1 ¶¶ 36-37; *see also* DE 1 ¶ 16(e),(f), ¶ 21.)  However, because Defendant Corizon has yet to appear, the Court has yet to address Plaintiff's claims against this Defendant.

### E.    Conclusion

Plaintiff has not stated an ADA, MPDCRA or Eighth Amendment claim against Defendant KONE, and these claims against it should be dismissed.  As to the State Defendants, their motion for summary judgment should be denied.  Finally, whatever the Court decides as to these motions, the claims against Defendant Corizon remain to be addressed.  Thus, the case should not be closed.

## III.    PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d

1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections

must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must recite precisely the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated: May 31, 2017                 s/Anthony P. Patti
                                    Anthony P. Patti
                                    UNITED STATES MAGISTRATE JUDGE


I hereby certify that a copy of the foregoing document was sent to parties of record
on May 31, 2017 electronically and/or by U.S. Mail.

                                    s/Michael Williams
                                    Case Manager for the
                                    Honorable Anthony P. Patti