UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MACK JUIDE,

                Plaintiff,

v.

MICHIGAN DEPARTMENT
OF CORRECTIONS, CORIZON
HEALTH, INC., THE KONE
COMPANY, PAUL D. KLEE,
WILLIS CHAPMAN, RICHARD
WHITE, DAVE MARTIN,
JERRY TANNER, and ROBIN
DONAGHY

                Defendants.
_____/

Case No. 2:16-cv-13806
District Judge Sean F. Cox
Magistrate Judge Anthony P. Patti

**REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DE 58) AND GRANT MDOC DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DE 59)**

**I.     RECOMMENDATION**: The Court should deny Plaintiff's motion for summary judgment (DE 58) and grant MDOC Defendants' motion for summary judgment (DE 59).

**II.    REPORT:**

    **A.    Background**

Plaintiff Mack Juide (#441625) is currently incarcerated at the Michigan Department of Corrections (MDOC) Oaks Correctional Facility (ECF) in

Manistee, Michigan.  *See* www.michigan.gov/corrections, "Offender Search." Plaintiff, who is proceeding without the assistance of counsel, filed his complaint and application to proceed *in forma pauperis* against nine defendants:  Corizon Health, Inc. (Corizon); wheelchair lift contractor KONE Company (KONE, Inc.); the MDOC; and six employees of the MDOC's Gus Harrison Correctional Facility (ARF), where the facts underlying this lawsuit allegedly took place (Paul Klee, Willis Chapman, Richard White, Dave Martin, Jerry Tanner and Robin Donaghy). (DE 1, ¶¶ 2-9, 13.)  Defendants Kone, Inc. and Corizon have since been dismissed from this lawsuit.  (DEs 29, 41, 48, 49.)

The factual background in this case has been set forth in my prior reports and recommendations in this matter and need not be repeated in full here.  In brief summary as to the remaining defendants (the MDOC and its six ARF employees, *i.e.*, "the MDOC Defendants"), Plaintiff asserts that he "is a paraplegic, T-5, and is paralyzed from the chest down, and is confined to a wheelchair[.]" (DE 1, ¶ 12.) Plaintiff alleges that after the wheelchair lift in his assigned housing unit within ARF broke, he was continually confined to the lower level of his housing unit and as a result, was denied: fresh air and proper exercise, telephone privileges, email access, legal materials and law library access, and proper healthcare and hygiene items.  (*Id.* ¶¶ 15-16.)  Plaintiff claims that on July 14, 2016, he submitted a grievance (ARF-1607-1599-03f) naming defendants Klee, Chapman, Martin,

Tanner and Donaghy and alleging that they were in violation of the ADA for their failure to maintain the wheelchair lift in working condition. (*Id.* ¶ 17.) Plaintiff alleges that, on July 15, 2016, in retaliation for filing this grievance, the MDOC Defendants transferred him to a segregation unit cell without any bedding or access to a toilet, and that on July 16th, they moved him into a cell in Level IV housing that did not have an operable wheelchair lift or accessible toilet facilities. (*Id.* ¶ 18.) Plaintiff also broadly alleges that "Defendants have retaliated against [him] in sundry forms, including, <u>inter alia</u>, deprive [sic] him of access to health care and proper meals[.]" (*Id.* ¶ 21.) Plaintiff alleges claims against the MDOC Defendants for violations of the Eighth Amendment and the Americans with Disabilities Act (ADA) (42 U.S.C. §§ 12101-12213) (Counts I & IV), and First Amendment retaliation and discrimination (Count II). (*Id.* ¶¶ 23-34, 38-40.)[1]

This case has been referred to me for all pretrial proceedings.

### B. Prior Order on Summary Judgment

---

[1] Plaintiff also asserted a claim against the MDOC Defendants in Counts I and IV under the Michigan Persons with Disabilities Civil Rights Act (MPDCRA) (Mich. Comp. Laws §§ 37.1101-37.1607). However, as explained in my prior report and recommendation, the MPDCRA does not apply to correctional facilities with respect to actions or decisions regarding an individual serving a sentence of imprisonment. (See DE 29 at 9-10, citing MCL § 37.1301(b) and *Uhrynowski v. Cty. of Macomb*, No. 06-15483, 2007 WL 2984001, at *9 (E.D. Mich. Oct. 12, 2007) ("The plain meaning of the statute's language excludes correctional facilities only in regard to persons serving prison sentences.").)

On September 12, 2017, the Court entered an Order adopting my May 31, 2017 report and recommendation to grant Defendant Kone Inc.'s motion to dismiss and to deny the MDOC Defendants' motion for summary judgment based on exhaustion of remedies. (DEs 29, 41.) Specifically, with regard to the MDOC Defendants' motion, I found that although Plaintiff filed the instant lawsuit *before* he had received any Step III grievance response and *before* the 120-day time-period set forth in the MDOC grievance procedure had expired, based on the limited record before the Court "at the time" (consisting of the Step III grievance report but without any underlying grievance forms or responses), "the Court is not in a position to conclude that Plaintiff pre-empted the grievance process when he filed his lawsuit on October 25, 2016." (DE 29 at 16-17; *see also* DE 41 at 2 ("The magistrate judge ultimately concluded that, based upon the limited evidence presented to the Court in connection with the motion, the State Defendants failed to establish that they are entitled to summary judgment.").)

### C.   Instant Motions

On August 20, 2018, Plaintiff filed a motion for summary judgment in which he alleges that Defendants admitted in their answers to interrogatories that: (1) Plaintiff was housed in a segregation unit with no emergency exit for wheelchairs, "thus leaving Plaintiff in his cell without being able to shower or manage his healthcare," and (2) Plaintiff was placed in a non-handicapped cell

"which supports Plaintiff's claim that he was forced to wallow in his own bodily waste for a total of 72 hours[.]" (DE 58 at 4.) Plaintiff claims that "[t]hese admissions should result in this Court granting Plaintiff's Motion for Summary Judgment." (*Id.*)

In response to Plaintiff's motion, the MDOC Defendants filed their motion for summary judgment on September 17, 2018. (DE 59.) The MDOC Defendants argue that: (1) Plaintiff failed to exhaust his administrative remedies as to his claims against them; (2) MDOC Defendants Klee, Chapman, White, Martin, Donaghy and Tanner are not liable under the ADA in their individual capacities; (3) the ADA official capacity claims against the individual defendants should be dismissed because the MDOC is the real party in interest; (4) Plaintiff failed to establish a denial of access to the courts claim under 42 U.S.C. § 1983; (5) Plaintiff's retaliation claim fails because he cannot establish that his grievance was the "but for" reason for his transfer to segregation and Level IV housing; and (6) they are entitled to qualified immunity. (*Id.*)

On November 19, 2018, Plaintiff filed his "reply in opposition to Defendants' motion for summary judgment." (DE 65.) Plaintiff argues that the MDOC Defendants previously filed a motion for summary judgment on the basis of exhaustion (DE 22), which was denied (DEs 29, 41), and that he relies on that Order. (DE 65 at 1-3.) Plaintiff also argues that he properly asserted ADA claims

against the individual MDOC Defendants in their official capacities, and that he has established that the MDOC Defendants retaliated against him for filing a grievance because he was moved to a segregation cell one day after filing that grievance. (*Id.* at 4-5.)

The MDOC Defendants filed a reply in support of their motion for summary judgment on November 28, 2018, arguing that they are entitled to summary judgment because: (1) Plaintiff failed to exhaust his administrative remedies with regard to his claims against them; (2) the ADA claims should be dismissed against the individual defendants; and (3) Plaintiff has failed to show that he would not have been transferred to segregation and Level IV housing "but for" his grievance. (DE 66.) Because all of Plaintiff's pending claims require dismissal for failure to exhaust his administrative remedies, I have refrained from addressing any of the other issues in my analysis.

### D. Standard

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is material if it might affect the outcome of the case under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "views the evidence, all facts, and any inferences that may be drawn from the facts

in the light most favorable to the nonmoving party." *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132, 135 (6th Cir. 2004) (internal citations omitted).

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); *cf.* Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts…. [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted).

Summary judgment is appropriate if the evidence favoring the nonmoving party is merely colorable or is not significantly probative. *City Management Corp.*

7

*v. United States Chem. Co.*, 43 F.3d 244, 254 (6th Cir. 1994).  In other words, summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case[.]"  *Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

The fact that Plaintiff is *pro se* does not lessen his obligations under Rule 56.  Rather, "liberal treatment of pro se pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  In addition, "[o]nce a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'"  *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  The Sixth Circuit has made clear that, when opposing summary judgment, a party cannot rely on allegations or denials in unsworn filings and that a party's "status as a pro se litigant does not alter [this] duty on a summary judgment motion."  *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010); *see also United States v. Brown*, 7 F. App'x 353, 354 (6th Cir. 2001) (affirming grant of summary judgment against a *pro se* plaintiff because he "failed to present any evidence to defeat the government's motion").

### E. Discussion

#### 1. Prison Litigation Reform Act

Under the PLRA, a prisoner may not bring an action "with respect to prison conditions under section 1983 of this title, or any other Federal law . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Congress enacted this provision to address the "outsized share" of prisoner litigation filings and to ensure that "the flood of nonmeritorious claims does not submerge and effectively preclude consideration of the allegations with merit." *Jones v. Bock*, 549 U.S. 199, 203-04 (2007). Put another way, the purpose of § 1997e(a) is to "reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). In addition, exhaustion "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of [the agency's] procedures." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (internal quotations and citations omitted).

"There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought into court." *Jones*, 549 U.S. at 211. The prison's grievance process determines when a prisoner has properly exhausted his or her claim. *Id.* at 219 ("The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system, but it is the

9

prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."). Even where a prisoner has made some attempts to go through the prison's grievance process, "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999). The prisoner "may not exhaust his [or her] administrative remedies during the pendency of the federal suit." *Id.* (citations omitted); *see also Woodford*, 548 U.S. at 95 ("A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . ."). However, "the PLRA and Federal Rule of Civil Procedure 15 permit a plaintiff to amend his complaint and add claims that were exhausted after the commencement of the lawsuit, *provided that the plaintiff's original complaint contained at least one fully exhausted claim*." *Mattox v. Edelman*, 851 F.3d 583, 595 (6th Cir. 2017) (emphasis added). Moreover, "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones*, 549 U.S. at 216. Instead, failure to exhaust administrative remedies is an affirmative defense under the PLRA. As such, Defendants bear the burden of proof on exhaustion. *Surles v. Andison*, 678 F.3d 452, 456 (6th Cir. 2012).

    **2.**    **MDOC Grievance Procedures**

Pursuant to its Policy Directive (PD) 03.02.130, dated July, 9, 2007, the administrative remedies available at the MDOC are as follows. First, the inmate must attempt to resolve any issue with the staff member involved within two business days of becoming aware of a grievable issue. (DE 59-2, ¶ P.) If the issues are not resolved within five business days, the inmate may file a Step I grievance using the appropriate form. (*Id.*) "Dates, times, places, and names of all those involved in the issue being grieved are to be included." (*Id.* ¶ R.) The inmate should receive a response within fifteen business days of filing the grievance. (*Id.* ¶ X.)

If the inmate is dissatisfied with the disposition of the grievance or does not receive a response by ten business days after the due date, he or she may file a Step II grievance using the appropriate form. (*Id.* ¶ BB.) As with Step I, a response to the Step II grievance should be issued within fifteen business days. (*Id.* ¶ CC.)

Similarly, if the inmate is dissatisfied with the Step II response or does not receive a response by ten business days after the response was due, he or she may file a Step III grievance. (*Id.* ¶ FF.) The matter is fully exhausted after the disposition of the Step III grievance. (*Id* ¶ B.) *Surles*, 678 F.3d at 455 ("A grievant must undertake all steps of the MDOC process for his grievance to be considered fully exhausted."). "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120

calendar days unless an extension has been approved in writing." (DE 59-2, ¶ S). Although the 120-day deadline is not mandatory, "some courts view the time frame as a deadline for the MDOC to respond to a Step III grievance." *Muttscheler v. Martin*, No. 1:12cv1221, 2013 WL 3730095, at *5 (W.D. Mich. July 15, 2013) (citing *Sims v. Rewerts*, No. 07-12646, 2008 WL 2224132, at *5 (E.D. Mich. May 29, 2008)).

### 3. Plaintiff failed to exhaust his administrative remedies

The plain language of the PLRA makes clear that "no action shall be brought with respect to prison conditions under 1983, or any other Federal law, by a prisoner confined in any jail, … until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, Plaintiff was required to exhaust all of his claims against the MDOC Defendants here, whether brought under 42 U.S.C. § 1983 or the ADA. *See Jones v. Smith*, 266 F.3d 399, 400 (6th Cir. 2001) (plaintiff's complaint under the ADA was properly dismissed for failure to exhaust administrative remedies); *Chamberlain v. Overton*, 326 F.Supp.2d 811, 815 (E.D. Mich. 2004) ("The statute does not apply solely to actions brought under 1983, but includes any action brought under Federal law which would include a claim based on the ADA.").

The MDOC Defendants argue that Plaintiff failed to properly exhaust his administrative remedies as to his claims against them because he failed to complete

the grievance process before filing his Complaint in this matter; that is, he filed his Complaint before receiving any Step III grievance response. (DE 59 at 17-20.) Plaintiff responds that this issue was previously raised and rejected by this Court's order denying Defendants' first motion for summary judgment. (DE 65 at 1.) He also argues that he filed this lawsuit before receiving a Step III response because he was suffering from a urinary tract infection and "was in immediate need of some type of intervention[.]" (*Id.* at 3.)

First, Plaintiff is correct that the Court previously addressed a motion filed by the MDOC Defendants asserting that Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. However, as stated in my prior report and recommendation, and as acknowledged in the Order adopting that report and recommendation, because of the limited information before the Court "at the time," the Court was "not in a position to conclude that Plaintiff pre-empted the grievance process when he filed his lawsuit on October 25, 2016." (DE 29 at 16-17; DE 41 at 2 ("The magistrate judge ultimately concluded that, based upon the limited evidence presented to the Court in connection with the motion, the State Defendants failed to establish that they are entitled to summary judgment.").) Specifically, I found that "[w]hile [the MDOC Defendants] have supplied a Step III grievance report, they have not provided a single underlying grievance form or grievance response. Thus, not only is the Court without guidance as to the subject

13

of those grievances but more importantly, the Court is without guidance as to whether any extensions were granted – something which might have shed light on the reasonableness of Plaintiff's 71-day waiting period [for a Step III response]." (DE 29 at 16-17.) The MDOC Defendants have now supplied the Court with Plaintiff's Step III Grievance Report, as well as the underlying relevant grievance documents. (*See* DE 59-3.) Because the exhaustion requirement is mandatory, and a district court does not have discretion under the PLRA to allow a plaintiff's claim to proceed despite his failure to exhaust such remedies, *Woodford*, 548 U.S. at 85; 42 U.S.C. § 1997e(c)(1), and because failure to exhaust administrative remedies is an affirmative defense that can be asserted at any time before or during trial, *see* Fed. R. Civ. P. 12(h), I will consider the MDOC Defendants' failure to exhaust argument asserted here. In addition, the Court entered a Scheduling Order in this matter on April 12, 2018, expressly permitting Defendants to file one additional motion for summary judgment on the merits. (DE 53 at 2.)

The MDOC Defendants have submitted Plaintiff's Step III Grievance Report, which identifies all grievances that Plaintiff pursued to Step III of the grievance process between January 1, 2012 and September 12, 2018, the date the report was generated. (DE 59-3.) The Report indicates that Plaintiff filed four Step III grievance appeals while he was incarcerated at ARF:

14

1) <u>Grievance No. ARF-16-07-1628-03E</u>:  Step I filed on July 17, 2016 and Step III response mailed on November 23, 2016; 120-day deadline on November 14, 2016;

2) <u>Grievance No. ARF-16-08-1911-27C</u>:  Step I filed on August 16, 2016 and Step III response mailed on December 7, 2016; 120-day deadline on December 14, 2016;

3) <u>Grievance No. ARF-16-08-1952-28K</u>:  Step I filed on August 23, 2016 and Step III response mailed on November 23, 2016; 120-day deadline on December 21, 2016; and

4) <u>Grievance No. ARF-16-09-2143-17B</u>:  Step I filed on September 11, 2016 and Step III response mailed on December 13, 2016; 120-day deadline on January 9, 2017.

(DE 59-3 at 8-9.)  The MDOC Defendants argue that, of these four grievances, only Grievance ARF-16-07-1628-03E arguably relates to Plaintiff's claims in his Complaint.  (DE 59 at 17-20.)  Plaintiff does not directly dispute this, although he does refer to a number of other grievances in his complaint and his "reply in opposition to Defendants' motion for summary judgment."  (*See* DE 1 at 4; DE 65 at 2, 6, 9-13.)  However, those other grievances cited by Plaintiff do not appear on Plaintiff's Step III Grievance Report and thus they were not exhausted through Step III of the MDOC grievance process.  In any event, I do not need to decide at this time the extent to which the three other Step III grievances filed at ARF relate to Plaintiff's claims here because a review of Plaintiff's Step III Grievance Report reveals that *none* of the grievances filed by Plaintiff at ARF had been properly

15

exhausted through Step III of the grievance process as of **October 25, 2016**, the date Plaintiff filed his complaint in this matter. (*See* DE 59-3 at 8-9.)

It is well-settled that a prisoner does not complete the administrative review process and exhaust his administrative remedies until *after* he receives a Step III response *or after* the 120-day deadline set forth in MDOC 03.02.130(¶ S) has passed. *See Anderson v. Borgerding*, No. 17-cv-12854, 2018 WL 3581137, at *4 (E.D. Mich. July 2, 2018) (collecting cases), *report and recommendation adopted*, 2018 WL 3575934 (E.D. Mich. July 25, 2018). Here, Plaintiff's first-filed grievance at ARF, Grievance No. ARF-16-07-1628-03E, was filed on July 17, 2016, and the Step III response was not mailed until November 23, 2016. (DE 59-3 at 12-15.) Further, the 120-day deadline for this grievance expired on November 14, 2018. The Step III responses to the three other subsequently-filed grievances at ARF were not mailed until December 7, 2016, November 23, 2016 and December 13, 2016 (DE 59-3 at 8-9), and the 120-day deadlines for these grievances expired between December 14, 2016 and January 9, 2017, all well after the October 25, 2016 filing of Plaintiff's Complaint. Therefore, it is undisputed that Plaintiff filed his October 25, 2016 Complaint *before* he received any Step III response to any grievance filed at ARF and *before* the 120-day deadline had expired on any of those grievances.

That Plaintiff has since received Step III responses to his grievances does not cure his failure to exhaust before filing suit under *Freeman*, *supra*, which states that "[t]he plain language of the statute makes exhaustion a precondition to filing an action in federal court." *Freeman*, 196 F.3d at 645. And, it is irrelevant that prison officials did not provide a response to one of Plaintiff's grievances, Grievance No. ARF-16-07-1628-03E, until after the expiration of the 120-day period. *See Fulkerson v. Washington*, No. 16-537, 2016 WL 7337157, at *3 (W.D. Mich. Nov. 3, 2016) ("Moreover, the fact that prison officials did not provide a response to Plaintiff's Step III grievance until after the expiration of the 120-day period is irrelevant."), *report and recommendation adopted*, 2016 WL 7326534 (W.D. Mich. Dec. 16, 2016); *see also Sparks v. Hutchinson*, No. 16-10752, 2017 WL 359607, at *6 & n.6 (E.D. Mich. Jan. 4, 2017) (same), *report and recommendation adopted*, 2017 WL 345675 (E.D. Mich. Jan. 24, 2017).

Moreover, Plaintiff's assertion that he was justified in filing his complaint before receiving a Step III response to his grievances because he claims he was "suffering from a urinary tract infection, which in some cases is a life threatening illness" fails. "The statutory exhaustion requirement does not provide an exception for medical claims or exigent circumstances." *Cochran v. Caruso*, No. 07-228, 2008 WL 397597, at *5 (W.D. Mich. Feb. 11, 2008) (rejecting plaintiff's claim that he was excepted from exhaustion "[d]ue to the severity of his medical

17

condition, and urgent need for swift medical intervention, which [he] felt while going through the grievance process would quite possibly cause [him] a death sentence"); *see also Sparks*, 2017 WL 359607, at *5 (plaintiff's "concerns about the severity of his medical condition do not allow an exception to this exhaustion requirement"). In fact, the grievance process is designed to achieve more immediate, hands-on relief and amelioration than would necessarily be available in court, *i.e.*, to "give[] [the] agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court…." *Woodford*, 548 U.S. at 89.

Thus, because Plaintiff filed his Complaint on October 25, 2016, before he received a Step III response on any of his grievances filed at ARF and before the presumptive time period had expired on any of those grievances, he failed to properly exhaust his administrative remedies and all of Plaintiff's claims against the MDOC Defendants should be dismissed without prejudice. *See Boyd v. Corrections Corp. of America*, 380 F.3d 989, 994 (6th Cir. 2006) (dismissal for failure to exhaust is without prejudice).

### F. Conclusion

The Court should **GRANT** the MDOC Defendant's motion for summary judgment based on failure to exhaust administrative remedies and dismiss Plaintiff's claims against them without prejudice. Plaintiff's claims all being

precluded by his failure to exhaust, his own motion for summary judgment should be **DENIED**. If the Court adopts this report and recommendation, there will be no remaining parties or claims for adjudication.

### III. PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Fed. R. Civ. P. 72(b)(2) and E.D. Mich. LR 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.* Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.* If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: December 26, 2018         s/*Anthony P. Patti*
                                 Anthony P. Patti
                                 UNITED STATES MAGISTRATE JUDGE